UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHUCK SALEEN and EUGENE T. BROWN, individually and on behalf of other similarly situated individuals,<br><br>                   Plaintiffs,<br><br>v.<br><br>WASTE MANAGEMENT, INC.,<br><br>                   Defendant. | Case No. 08-CV-4959 (PJS/JJK)<br><br>ORDER OVERRULING OBJECTION AND AFFIRMING ORDER OF MAGISTRATE JUDGE |

      Paul J. Lukas, Michele R. Fisher, Rebekah L. Bailey, and Robert L. Schug, NICHOLS KASTER, PLLP, for plaintiffs.[1]

      James N. Boudreau, Marko J. Mrkonich, Andrew J. Voss, Noah Lipschultz, and John A. Ybarra, LITTLER MENDELSON, P.C., for defendant.

      Plaintiffs brought this action against defendant Waste Management, Inc. ("WMI") to recover overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. This matter is before the Court on plaintiffs' objection to the June 15, 2009 order of United States Magistrate Judge Jeffrey J. Keyes denying plaintiffs' motion for conditional certification. The Court held a hearing on the objection on August 18, 2009. For the reasons set forth below, Judge Keyes's order is affirmed.

---

[1] After filing their objection to Judge Keyes's order, plaintiffs filed an amended complaint adding new plaintiffs. Because the new plaintiffs were not parties to these proceedings at the time that plaintiffs objected to the order, the Court lists only the original plaintiffs in the caption.

WMI provides sanitation and trash-collection services throughout the United States. Plaintiffs, who worked as drivers for WMI, allege that WMI violated the FLSA by failing to pay overtime compensation for work performed during meal breaks.[2] *See* 29 U.S.C. § 207 (requiring employers to pay an overtime premium for hours worked in excess of forty per week). Specifically, plaintiffs allege that they were subject to a timekeeping system that automatically deducted a thirty-minute meal break. Plaintiffs concede that, at least on paper, WMI provided a process for workers to "reverse" the meal-break deduction on days that they worked through lunch. But plaintiffs allege that WMI maintained an unwritten policy to discourage and to refuse to honor these reversal requests. As a result, plaintiffs allege, they often were not compensated for working through lunch.

The FLSA permits a collective action to be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To be included in the collective action, an employee must affirmatively opt in to the action by filing a written consent form with the court. *Id.* Courts have discretion, in "appropriate cases," to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). In this case, plaintiffs seek conditional certification of a class defined as follows:

> All present and former sanitation truck drivers and ride-along loaders who worked for Waste Management since September 22, 2005 and who received automatic lunch deductions without confirmation by Waste Management that they took their breaks.

---

[2]Plaintiffs and WMI dispute whether plaintiffs are employed by WMI or instead by a subsidiary of WMI. For the sake of convenience, the Court refers to WMI as plaintiffs' employer without intending to suggest any view on this issue.

Lukas Aff. Ex. A at 1. According to WMI, the proposed class contains between 20,000 and 30,000 employees.

Unfortunately, the United States Supreme Court and the federal courts of appeals have provided very little guidance about when a class should be conditionally certified and court-supervised notice authorized in an FLSA action. This Court has held, though, that before a class can be conditionally certified, plaintiffs must establish a "colorable basis . . . that a class of similarly situated plaintiffs exists" or that "the putative class members were the victims of a single decision, policy, or plan." *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005); *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citation and quotations omitted).

Plaintiffs in this case argue that they are "similarly situated" and subject to "a single decision, policy, or plan" because all of them were subject to the automatic-deduction system. Obviously, though, this cannot be sufficient to justify conditional certification. Any two people who work at the same time for the same employer are going to be subject to *some* common policies. That does not mean that a class may be conditionally certified any time two employees of the same company bring an FLSA action. What the case law of this District requires is that the putative class members be the "*victims* of a single decision, policy, or plan." *Burch*, 500 F. Supp. 2d at 1186 (emphasis added). In other words, the putative class members must be harmed by an *unlawful* companywide policy.

Plaintiffs do not contend that any of WMI's written policies are, on their face, illegal. To the contrary, plaintiffs concede that WMI may, consistent with the FLSA, presume that employees take a half-hour meal break. Plaintiffs also concede that WMI may ask employees to

inform WMI when they work through lunch.  Plaintiffs further agree that, as long as WMI reverses the half-hour deduction when it becomes aware that a worker has not taken a meal break, WMI does not act unlawfully.  This is exactly what WMI's written policy requires, and, according to WMI, this is exactly what WMI does.

Plaintiffs allege, though, that WMI maintains an (unwritten) policy to violate its (written) policy.  Specifically, plaintiffs allege that WMI has adopted a policy to refuse to reverse the thirty-minute meal deduction, even when it becomes aware that an employee has worked through lunch.  The question before Judge Keyes — and now before this Court — is whether plaintiffs have established a "colorable basis" for this allegation.

This raises two difficult issues — issues that arise whenever conditional certification is sought in an FLSA case.  First, how much evidence must a plaintiff submit in order to establish a "colorable basis" that all members of the putative class were harmed by the same unlawful policy?  And second, what weight, if any, should a court give evidence submitted by a defendant that the members of the putative class were *not* harmed by a single policy?

Plaintiffs argue that very little evidence should be needed to establish the "colorable basis" justifying conditional certification.  They contend that the kind of rigorous analysis applied by courts before certifying class actions under Fed. R. Civ. P. 23 has no place at this stage of an FLSA action.  Rather, plaintiffs urge, that type of rigorous analysis is appropriate when the defendant later moves to decertify a conditionally certified class — a motion that is generally brought after discovery, after all potential opt-in plaintiffs have been heard from, and after the scope of the litigation becomes clear.  In support of their argument, plaintiffs point to the fact that the statute of limitations is not tolled for any worker until that worker opts in to the

lawsuit. Thus, every day that court-supervised notice is delayed for discovery or any other reason is a day that thousands of workers lose part of their potential recovery. In addition, according to plaintiffs, court-supervised notice imposes relatively little hardship on defendants. For these and other reasons, plaintiffs urge that, as a general matter, courts should demand very little of plaintiffs before conditionally certifying an FLSA class.

In this particular case, plaintiffs have not, at this early stage of the litigation, offered direct evidence that WMI has adopted an unwritten policy not to pay for worked meal breaks as required by its written policy. Instead, plaintiffs point to circumstantial evidence suggesting that such a policy exists. In particular, plaintiffs provide evidence from 112 declarants and a number of deponents indicating that these individuals and their coworkers were pressured to work through meal breaks, were closely tracked by management as they worked their routes, and were not compensated when they worked through meal breaks. Plaintiffs point out that these declarants and deponents represent 71 WMI facilities in 24 states out of a total of, at most, 820 facilities in 47 states.[3]

Of course, the mere fact that some employees of a large corporation were not properly compensated under the FLSA does not provide a "colorable basis" to infer the existence of an unlawful companywide policy. In any large corporation, mistakes are going to be made. Innocent human error — such as computation mistakes, or records being accidentally misplaced

---

[3]The Court is not quite clear on the number of WMI facilities at issue. Plaintiffs offer a corporate document stating that WMI has 354 collection operations, 341 transfer stations, and 277 active landfill disposal sites. Lukas Aff. Ex. D. The Court would have assumed that the number of collections operations would be the relevant number of sites. But WMI also offers evidence that the putative class members worked at 820 locations. *See* Lipschultz Decl. Ex. 1 ¶ 4. Plaintiffs do not seem to dispute this number in their briefing, although they suggested at oral argument that the number of collections operations is likely the relevant number.

— will inevitably result in some employees being underpaid. Moreover, in any large corporation, there are going to be local managers who are ignorant of corporate policies, or who misunderstand corporate policies, or who intentionally violate corporate policies in order to make their own performance look better. Thus the mere fact that a small fraction of employees allege that they did not receive the compensation to which they were entitled provides almost no evidence that the *reason* that these employees were underpaid was because of an unlawful companywide policy.

At the same time, as the fraction of employees who allege that they were shortchanged grows, it becomes less likely that the employees are the victims of innocent mistakes or local managers, and more likely that they are the victims of an unlawful companywide policy. At some point — and courts struggle to identify this point — the percentage of employees who complain of being improperly compensated grows large enough to establish a "colorable basis" to infer that they were victimized by a companywide policy. When that happens, a class should be conditionally certified, and court-supervised notice should be ordered.

In this case, if the Court were to look only at plaintiffs' evidence — and the Court were to assume that the experience of each declarant and deponent accurately represents the experience of every one of that individual's co-workers — the Court would probably find that plaintiffs have offered a "colorable basis" for believing that they have been victimized by a single policy of WMI and conditionally certify a class. And this is exactly what plaintiffs urge the Court to do. Specifically, plaintiffs argue that, at the conditional-certification stage, the Court should ignore any evidence submitted by a defendant. To do otherwise, plaintiffs argue, would be to make conditional-certification proceedings far lengthier, costlier, and more complicated than Congress

intended. In particular, it would present plaintiffs with a Hobson's choice: Plaintiffs could forego discovery and move quickly for conditional certification, which would maximize the recovery of potential opt-in plaintiffs, but also leave plaintiffs open to being "ambushed" by untested evidence submitted by a defendant resisting conditional certification. Or plaintiffs could put off moving for conditional certification and take discovery, only to watch the recovery of potential opt-in plaintiffs dwindle every day.

Although the Court sympathizes with the difficult position in which plaintiffs find themselves, the Court is unaware of any court that has agreed with plaintiffs' position that evidence submitted by a defendant resisting conditional certification should be completely ignored. Moreover, the Court's sympathy for plaintiffs in this case is tempered by the fact that plaintiffs are not seeking to certify a class of people who work under one particular manager, or who work at one particular plant, or who work under one particular collective-bargaining agreement, or even who work in one particular state. Plaintiffs are instead asking this Court to certify a conditional class of tens of thousands of employees (some unionized, some not) who worked for untold numbers of different managers at hundreds of different locations throughout the United States. Plaintiffs have no direct evidence of an unlawful policy that applies to all of these people, but instead ask the Court to infer the existence of such a policy from the fact that a tiny fraction of WMI workers allege that they were not paid for working through meal breaks. When plaintiffs take aim at such a large target without any direct evidence that they have been victimized by a companywide policy, it is not unreasonable to expect plaintiffs to conduct at least some discovery to justify their request for conditional certification. The Court is therefore unwilling, in the context of this case, to ignore WMI's evidence.

Turning to that evidence: WMI offers evidence that, on approximately 222,000 occasions during the proposed class period, it did in fact pay for time worked during meals. Lipschultz Decl. Ex. 18 ¶ 6. WMI further offers evidence that a number of the opt-in plaintiffs were *themselves* paid for meal breaks on many occasions during the class period — specifically, that they filed requests to reverse the half-hour meal-break deduction, those requests were honored, and they were paid for working through lunch. *Id.* One can argue about the significance of WMI's evidence. For example, plaintiffs contend that 222,000 is less than 3% of the total number of meal breaks at issue, while WMI counters that plaintiffs' 112 declarations represent fewer than 1% of the 20,000 to 30,000 potential class members. But the bottom line is that evidence that WMI paid for time worked during meal breaks on hundreds of thousands of occasions is very difficult to reconcile with plaintiffs' claim that WMI maintains a companywide policy not to pay for worked meal breaks.

WMI also points to evidence that employees who were allegedly not paid for working through lunch give very different explanations for being shortchanged. Some claim that they asked to be paid but their requests were ignored. *See, e.g.*, Andrews Decl. ¶ 8. Others claim that they did not ask to be paid. Of those who did not ask to be paid, some assert that they were not aware that they *could* ask to be paid. *See, e.g.*, Colgan Decl. ¶ 7. Others do not claim ignorance of WMI's written policy, but do not explain why they did not ask to be paid. *See, e.g.*, Alfonso Williams Decl. ¶¶ 6-10.

WMI argues that, in light of this evidence, plaintiffs have failed to establish a "colorable basis" for believing that WMI had a companywide policy not to compensate employees who worked through meal breaks. And if, as the evidence strongly suggests, the reasons why an

employee might not have been paid for working through a meal break varied from individual to individual, manager to manager, and facility to facility, then this litigation should not proceed as a single, nationwide collective action.

The Court finds the question of conditional certification to be a close one. But because the question is so close, Judge Keyes's order must be affirmed. A magistrate judge's ruling on nondispositive pretrial matters may be reversed only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Chase v. Comm'r of Internal Revenue*, 926 F.2d 737, 740 (8th Cir. 1991) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Given the general uncertainty of the law regarding conditional certification of FLSA actions, and given the evidence and arguments submitted by the parties, the Court cannot say that it is left with the definite and firm conviction that Judge Keyes's denial of plaintiffs' motion for conditional certification was erroneous. The order is therefore affirmed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' objection [Docket No. 161] is OVERRULED.

2. The June 15, 2009 order of Magistrate Judge Keyes [Docket No. 147] is AFFIRMED.

3. The claims of plaintiff Eugene Brown and existing opt-in plaintiffs are DISMISSED WITHOUT PREJUDICE. This dismissal is STAYED for sixty days

to permit Brown and the opt-in plaintiffs an opportunity to re-file their claims in the appropriate courts.

Dated: September 1, 2009      s/Patrick J. Schiltz
                              Patrick J. Schiltz
                              United States District Judge